COMMONWEALTH of Pennsylvania, Appellant

v.

Dereck MARTZ, Appellee.

Superior Court of Pennsylvania.

Argued March 13, 2012.
Filed April 17, 2012.

---

Christopher J. Schmidt, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

John McDanel, Berwick, for appellee.

BEFORE: STEVENS, P.J., PANELLA, J., and MUNDY, J.

OPINION BY STEVENS, P.J.

The Commonwealth appeals the Order entered in the Court of Common Pleas of Columbia/Montour County, which gave Appellee Dereck Martz credit for January 21, 2010 to August 12, 2011, when he was at liberty due to a clerical error.[1] For the reasons discussed *infra,* we conclude the trial court erred in awarding credit for the time Appellee was erroneously at liberty. Thus, we vacate the trial court's sentencing order as it relates to credit for "time served" and remand with specific instructions. In all other respects, we affirm.

The relevant facts and procedural history are as follows: On June 22, 2005, a jury convicted Appellee on one count of indecent assault, 18 Pa.C.S.A. § 3126(a)(7), and one count of corruption of minors, 18 Pa. C.S.A. § 6301(a)(1), in connection with his sexual assault of an eleven-year-old girl. On February 22, 2006, the trial court sentenced Appellee to one year to four years in prison for indecent assault, and one year to four years in prison for corruption of minors, the sentences to run consecutively. Thus, Appellee's aggregate sentence was two years to eight years in prison. Additionally, the trial court found Appellee to be a sexually violent predator for Pennsylvania's Megan's Law III [2] purposes.

On August 10, 2006, the trial court filed an amended sentencing order indicating Appellee's sentences were to run concurrently, resulting in a reduced aggregate sentence of one year to four years in prison. On direct appeal, this Court affirmed Appellee's conviction but held the trial court erred when it filed its amended sentencing order reducing Appellee's sentence. *Commonwealth v. Martz,* 926 A.2d 514 (Pa.Super.2007). Therefore, on June 25, 2007, upon remand, the trial court rein-

---

**1.** As discussed *infra,* the trial court also gave Appellee credit for time served from August 12, 2011 to September 1, 2011.

**2.** 42 Pa.C.S.A. §§ 9791–99.

stated Appellee's original sentence in which Appellee was to serve his sentences consecutively, thus resulting in an aggregate of two years to eight years in prison. However, after the trial court reinstated Appellee's original sentence, for unknown reasons, the Montour County Clerk of Courts failed to transmit the June 25, 2007 sentencing order to the Pennsylvania Department of Corrections (the DOC).

On January 18, 2008, Appellee filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–46. However, during the pendency of his petition, unaware Appellee's sentences were to run consecutively, the DOC released Appellee from custody on January 21, 2010, at the end of his maximum four-year "concurrent" sentence. That is, Appellee was not placed on parole; but rather, he was released from prison after he "maxed out" his August 10, 2006 sentence, which imposed concurrent sentences, as opposed to his reinstated June 25, 2007 sentence, which imposed consecutive sentences.

Believing Appellee was no longer eligible for relief since he was not "currently serving a sentence of imprisonment, probation, or parole for the crime," 42 Pa.C.S.A. § 9543(a)(1)(i), the Commonwealth moved to dismiss Appellee's PCRA petition. On June 22, 2010, the PCRA court granted the Commonwealth's motion, thereby dismissing Appellee's PCRA petition without reaching the merits thereof. On July 12, 2010, Appellee filed a notice of appeal to this Court.

Subsequently, on August 11, 2011, the Commonwealth discovered the Clerk of Courts had failed to send the June 25, 2007 re-sentencing order to the DOC, and therefore, Appellee had been mistakenly released from prison before the completion of his sentence. As a result, the Commonwealth applied for a bench warrant, and, on August 12, 2011, Appellee was detained. On September 1, 2011, following a hearing,[3] the trial court recommitted Appellee to serve the remainder of his sentence under the terms of the June 25, 2007 re-sentencing order. However, the trial court gave Appellee credit for "time served" from January 21, 2010, when he was mistakenly released from prison due to an apparent clerical error, until September 1, 2011, when he was recommitted to serve the remainder of his sentence.[4] The Commonwealth filed a notice of appeal to this Court, arguing in its timely-filed court-ordered Pa.R.A.P. 1925(b) statement that the trial court imposed an illegal sentence on September 1, 2011, when it gave Appellee credit for "time served" while he was at liberty.[5] In its Pa.R.A.P. 1925(a) opinion, in responding to the Commonwealth's issue, the trial court explained, in relevant part, the following:

---

**3.** The purpose of the hearing was to set a recommitment date and to determine whether Appellee was entitled to credit for any "time served." During the hearing, the Commonwealth argued Appellee was not entitled to credit for "time served" while he was at liberty due to the clerical error. N.T. 9/1/11 at 11–17.

**4.** In contrast to the traditional notion of credit for "time served," the trial court essentially gave Appellee credit for time not served, or "time spent erroneously at liberty." *Commonwealth v. Blair,* 699 A.2d 738 (Pa.Super.1997).

**5.** Meanwhile, on September 16, 2011, the Commonwealth and Appellee's counsel filed in this Court a joint motion for remand with regard to Appellee's PCRA petition, acknowledging Appellee's PCRA petition was not moot in that he had not completed his sentence. By Judgment Order entered on October 6, 2011, this Court granted the joint motion for remand, vacated the PCRA court's June 22, 2010 order, and remanded for further PCRA proceedings. *Commonwealth v. Martz,* No. 1137 MDA 2010 (Pa.Super. filed 10/6/11) (unpublished judgment order).

In reviewing a series of cases, the [Pennsylvania] Commonwealth Court said that "[t]hese cases indicate that a prisoner has the right to serve a sentence continuously rather than in installments, but a continuous sentence may be interrupted by some fault of the prisoner.... The principle is applicable where prison authorities erroneously release a prisoner from prison and then deny the prisoner credit for the time spent outside of prison." *Forbes v. Pennsylvania Department of Corrections*, 931 A.2d 88, 93 (Pa.Cmwlth.2007)[, *affirmed*, 596 Pa. 492, 946 A.2d 103 (2008) (*per curiam*)] (citations omitted). In this case, the prisoner was erroneously released due to no fault of his own, but due to a systemic clerical error. He had a right to serve his sentence continuously. Practically speaking, he is back in prison with almost two and one-half years left to serve on his maximum sentence, one of which will satisfy his minimum sentence.

Trial Court's Pa.R.A.P. 1925(a) Opinion filed 10/20/11 at 2–3.

On appeal, the Commonwealth's sole contention is that the trial court erred in giving Appellee credit for "time served" from January 21, 2010, when he was mistakenly released from prison due to a clerical error, until August 12, 2011, when Appellee was detained.[6]

■ Initially, we note that the Commonwealth presents a challenge to the legality of Appellee's sentence. *See Commonwealth v. Johnson*, 967 A.2d 1001 (Pa.Super.2009). "[T]herefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of

review is plenary." *Commonwealth v. Maxwell*, 932 A.2d 941, 943 (Pa.Super.2007).

■ The right to credit for time served is statutory in nature and arises from 42 Pa.C.S.A. § 9760, which provides, in relevant part, the following:

**§ 9760. Credit for time served**

[T]he court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent **in custody** as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1) (bold added). Thus, credit for time served is generally reserved for situations where the defendant is "in custody." *Commonwealth v. Stafford*, 29 A.3d 800 (Pa.Super.2011). "Indeed, Pennsylvania appellate courts consistently have interpreted section 9760's reference to 'custody' as confinement in prison or another institution." *Commonwealth v. Maxwell*, 932 A.2d 941, 944 (Pa.Super.2007) (citations omitted). Here, during the period in dispute, Appellee was in complete freedom, without any restrictions whatsoever. Thus, under Section 9760, Appellee was not "in custody" so as to receive credit for the time he was at liberty. *See Commonwealth v. Kyle*, 582 Pa. 624, 874 A.2d 12, 18 (2005) (holding the defendant was not entitled to credit for

---

**6.** The Commonwealth specifically indicates it does not object to the trial court giving credit to Appellee for time served from August 12, 2011, when Appellee was detained, to September 1, 2011, when he was formally recommitted to serve the remainder of his sentence.

*See* Commonwealth's Brief at 8. In that Appellee was in prison, and thus "in custody," during this time, we agree that the trial court did not err in giving credit for time served during this time. *See* 42 Pa.C.S.A. § 9760(1).

time spent on release pending appeal subject to electronic home monitoring since, under Section 9760, "in custody" means "time spent in an institutional setting"); *Stafford, supra.*

However, this does not end our inquiry, as the Pennsylvania Supreme Court has recognized that, in narrow circumstances, equitable factors may weigh in favor of giving credit. For example, in *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991), our Supreme Court concluded that, although a defendant who serves time on electronic home monitoring is generally not entitled to "credit for time served," equitable considerations required the granting of credit. Specifically, the Supreme Court stated the following:

> [The appellant] argues that ... he should ... be granted credit for the time he served in the electronic home monitoring program. [The appellant's] argument is based upon the Commonwealth Court's decision in *Jacobs v. Robinson*, 49 Pa.Cmwlth. 194, 410 A.2d 959 (1980). In *Jacobs*, a convict was inadvertently released from prison because of a clerical error in recording his sentence. Upon his release, he came under the supervision of probation authorities. When the error was discovered, the convict was taken back into custody. He was denied credit by prison authorities for the time he was at large in the community under supervision of probation authorities. The Commonwealth Court held, however, that credit towards his sentence must be afforded for the time that he was away from prison. It reasoned that a prisoner has a right to serve his sentence continuously rather than in installments, and that, inasmuch as the erroneous release was attributable to prison authorities rather than to any wrongdoing by the prisoner, the prisoner was entitled to credit for the time in question. We find this reasoning to be persuasive and, in the context

of the present case, the considerations that favor granting credit are even stronger than in *Jacobs*.

> Here, [the appellant's] release was the result of an erroneous understanding by prison authorities as to the manner in which a mandatory minimum sentence for driving under the influence of alcohol must be served. Before entering the electronic home monitoring program, [the appellant] was *assured* by prison authorities that time spent in the monitoring program would count towards his minimum sentence. Under these circumstances, denying [the appellant] credit for time served in home monitoring would constitute a manifest injustice.... [Thus, the appellant] should nevertheless have been given credit for time already spent in the home monitoring program.

*Kriston*, 527 Pa. at 97, 588 A.2d at 901 (emphasis in original).

Subsequent to *Kriston*, in *Commonwealth v. Blair*, 699 A.2d 738 (Pa.Super.1997), this Court was asked to determine whether an appellant, who had been free on bond pending appeal and, who through an oversight, was not incarcerated for over two years after his sentence was affirmed, was entitled to credit for the time he remained free. In finding that he was not entitled to any credit for the time he erroneously remained free on bond, this Court stated, in relevant part, the following:

> [The appellant] asked this court to apply the doctrine of credit for time erroneously at liberty[.] We decline to grant [the appellant] relief.

> We note that the doctrine of credit for time spent erroneously at liberty based on simple or mere negligence, as applied under the circumstances herein, pres-

ents an issue of first impression in Pennsylvania[.]

\* \* \*

We acknowledge the fact that [the appellant] failed to be incarcerated because of an error not his own. Further, [the appellant] did nothing to hinder the order to commence service of sentence; he did not flee, did not conceal his identity, lived and worked in the Western Pennsylvania area, and had attended the Community College of Allegheny County.[7] [The appellant] claims he did not have knowledge, during the time period in question, that his judgment of sentence had been affirmed by this court. While we sympathize with [the appellant's] plight, we conclude, however, that these factors do not and cannot nullify any portion of [the appellant's] sentence of imprisonment. We will not allow the court system's inadvertent error to cancel any part of [the appellant's] punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of any unintended delay or negligent error attributable to the government. The fact remains that, regardless of the delay, [the appellant] has not served the time he was so ordered to serve. [The appellant's] 'erroneous time at liberty' was spent, by his own admission, engaging in the normal activities of a member of free society. Considering [the appellant's] accomplishments in maintaining employment and pursuing educational goals, the argument could be made that he actually benefitted from his time at liberty. Indeed, it is difficult to accept [the appellant's] plea of 'enormous prejudice' in light of these circumstances.

In *Clark v. Floyd,* 80 F.3d 371 (9th Cir.1996), the 9th Circuit found that [the] appellant was entitled to credit toward his federal sentence from November 27, 1989, the date on which he was erroneously released from a Montana prison rather than being delivered to the custody of federal marshals, to August 18, 1992, the date on which he was actually taken into federal custody to begin serving his federal sentence. In a concurring and dissenting opinion, the Honorable Ferdinand F. Fernandez espoused persuasive and pertinent observations with regard to the appellant's receipt of credit:

[The appellant] now asserts that he should be credited for the time he was at liberty between his release from the Montana State Prison and his arrest by United States marshals. He suggests that he was confused and somehow just did not understand that the federal authorities might still expect him to serve his 15 year sentence for federal crimes. Of course, he never did ask or otherwise try to find out; he just took advantage of his freedom. I am far from impressed by his claim that fairness requires that he be given the credit he seeks.

\* \* \*

I fail to see, and [the appellant] does not explain, why the mere fact of his improper release by Montana state authorities means that he can avoid service of his sentence for his federal crimes. I do agree that the government cannot play cat and mouse with prisoners. I also agree that it is sad when someone begins to make a fresh start and is then arrested for his past sins. What I disagree with is allowing criminals, like [the appellant], to take

---

7. The law is not uniform with respect to whether or not a prisoner's conduct after he is mistakenly released is a relevant consideration in determining credit for time at liberty.

no responsibility for themselves when state authorities err and the federal authorities do not. . . . [The appellant] should not benefit. It is he who earned the 15 year punishment for his drug manufacturing. He should not be deprived of his desserts. . . .

*Clark*, 80 F.3d at 375–76 (Fernandez, J., concurring and dissenting).

As mentioned previously, there are no Pennsylvania cases that have specifically applied the doctrine of erroneous time at liberty as it has been examined herein. [The appellant] does, however, cite two Pennsylvania cases awarding credit to defendants under different circumstances. We find these case inapposite and readily distinguishable from the case at hand. In *Kriston*, [*supra* ], a defendant who had been given a 30–day mandatory sentence for a second DUI conviction was erroneously transferred into a home monitoring program. [Authorities erroneously informed the defendant the time in the program would count towards his minimum sentence]. The court decided that the defendant should be given credit for the time he served in the program. In so deciding, the court relied on the reasoning of the second case cited by [the appellant], *Jacobs*, [*supra* ]. In *Jacobs,* a convict who had been serving a prison term was inadvertently released from prison due to a clerical error in recording his sentence. Upon release, he came under the supervision of probation authorities. When the error was discovered, the convict was taken back into custody. The Commonwealth Court held that the sentence must be credited, reasoning that a prisoner has a right to serve his sentence continuously rather than in installments. The court also noted that the release was not attributable to any wrongdoing by the prisoner.

Here, [the appellant] cannot claim that certain assurances were made to him, *Kriston, supra,* or that his right to serve his sentence continuously, and not in installments, was abridged, *Jacobs, supra.* In contrast to *Jacobs,* [the appellant] was not erroneously released from prison; he had not yet begun to serve his sentence. This case does not, therefore, implicate the concern *Jacobs* sought to alleviate, i.e., the right to serve a continuous sentence. *Furthermore, the time periods for which the defendant in these cases were credited were not spent at 'liberty' within that term's common usage. In Kriston, the appellant spent time in a home monitoring program, and in Jacobs, the prisoner was released under the supervising authority of the probation department. In quite a different set of circumstances, [the appellant in this case] was not called to begin serving his sentence, and, instead, remained completely free for over two years.* Thus, to the extent, if any, that these cases can be categorized under the doctrine of credit for time erroneously at liberty, they provide little guidance with respect to the instant circumstances. We will not, therefore, give credence to [the appellant's] assertions that he is entitled to credit for the delay in the execution of his sentence.

*Blair,* 699 A.2d at 742–744 (footnotes omitted) (footnote in original) (emphasis added).

In *Commonwealth v. Wilson,* 744 A.2d 290 (Pa.Super.1999), after concluding an appellant, who was a pretrial detainee and under house arrest following release mandated by the federal court was not "in custody" under Section 9760, this Court looked to *Kriston, supra* and *Blair, supra* for guidance as to whether the appellant should receive credit for the time he served while on house arrest. With regard to *Kriston,* we noted the Supreme Court carved out an exception "narrowly

drawn and applied where the defendant was given assurances that he would be entitled to credit against his sentence for the period of home monitoring." *Wilson,* 744 A.2d at 292. With regard to *Blair,* we recognized that the defendant in *Blair* had not engineered his freedom, either by fleeing or concealing his identity once out on the street; however, the *Blair* court nevertheless held that the court system's error could not work to the defendant's benefit. *Wilson,* 744 A.2d at 292. We further noted that the *Blair* court emphasized that society had an interest in knowing that convicted criminals would be incapacitated, and of importance in *Blair* was the fact that, *inter alia,* the defendant "had truly been at liberty during his release, not on probation, as in *Jacobs,* or on home monitoring, as in *Kriston." Wilson,* 744 A.2d at 292 n. 5. Thus, finding the appellant had been given no assurances, in *Wilson,* we concluded the appellant was not entitled to credit for his period of time on house arrest.

Following this Court's Opinions in *Blair, supra* and *Wilson, supra,* the Pennsylvania Supreme Court, in *Commonwealth v. Kyle,* 582 Pa. 624, 874 A.2d 12 (2005), examined whether a defendant, who spent time on bail release subject to electronic home monitoring for a driving while under the influence of alcohol conviction, should be awarded credit for the time spent in the program. The Supreme Court, concluding such time did not amount to "in custody" for purposes of Section 9760, then examined whether any equitable considerations required the granting of credit. In finding no credit was due, the Supreme Court stated, in relevant part, the following:

> In the past, credit has been awarded for time spent on electronic monitoring based upon equitable circumstances. *See Kriston,* [supra] (assurance by prison authorities that time spent in monitoring program would count toward prison sentence; *Jacobs,* [*supra* ] (convict

inadvertently released from prison because of clerical error awarded credit for time spent at large in community, under supervision of probation authorities). [The defendant] has not argued that such an equitable circumstance is present here and the record reveals that none exists. [T]here is no suggestion that the parties believed that sentencing credit would be available. Nor did the trial judge lead [the defendant] to believe he would receive sentencing credit.

*Kyle,* 582 Pa. at 641–42, 874 A.2d at 22–23 (citation and footnote omitted).

Based on the binding authority discussed *supra,* in the case *sub judice,* we conclude that there are no equitable concerns entitling Appellee to credit for the time he was erroneously at liberty, and thus, the trial court erred in this regard. Unlike in *Kriston,* but similar to *Kyle,* there is no evidence that Appellee was assured that he would be credited for the time he spent at liberty and, in fact, in his September 16, 2011 joint motion, which was filed with this Court with regard to his PCRA appeal, Appellee made no assertion of such. Additionally, while Appellee was arguably originally prejudiced by his erroneous release when the PCRA court denied Appellee's PCRA petition on the basis he had completed his entire sentence, the mistaken belief was corrected when this Court remanded so that Appellee may continue seeking relief under the PCRA.

Furthermore, while we acknowledge Appellee had a right to generally serve his sentence continuously and not in installments, we note that, unlike in *Jacobs,* but similar to *Blair,* Appellee in this case remained completely free, without any restrictions, from the time he was erroneously released from prison until the time he was later detained. In *Blair,* this Court specifically noted that the fact the appellant had not been restricted in any way,

but was free to enjoy society, was an important factor in denying credit to him.

Finally, we find it necessary to examine the Pennsylvania Commonwealth Court's rather recent decision in *Forbes v. Pennsylvania Department of Corrections*, 931 A.2d 88 (Pa.Cmwlth.2007), *affirmed*, 596 Pa. 492, 946 A.2d 103 (2008) (*per curiam*),[8] since the trial court specifically relied on it in granting credit to Appellee for the time he was erroneously at liberty in the case *sub judice.*

In *Forbes*, the defendant received a sentence of ten to twenty years in prison for rape, with a parole eligibility date of February 23, 1990, and a maximum sentence date of February 23, 2000 (Sentence 1). *See id.* On February 11, 1982, the defendant was sentenced to seven to fifteen years in prison, also for a rape charge (Sentence 2). *See id.* Sentence 2 was imposed consecutively to Sentence 1. *See id.* On February 23, 1991, the defendant was paroled on Sentence 1 to begin serving Sentence 2. *See id.* Following the defendant's grant of parole, the DOC began the running of Sentence 2. *See id.* On February 23, 2000, the defendant completed serving Sentence 1, and the DOC informed the defendant that he was serving only Sentence 2 and that Sentence 2 would expire on February 23, 2006; however, on February 23, 2006, the DOC did not release the defendant from prison. *See id.* Rather, on February 24, 2006, the DOC aggregated Sentence 1 and Sentence 2, resulting in a total sentence of seventeen to thirty-five years, with a parole eligibility date of May 21, 1997, and a maximum sentence date of May 21, 2015. *See id.* The DOC determined that the defendant had been erroneously paroled on February 23, 1991, and therefore, the Board of Probation and Parole rescinded the grant of parole it had issued for the defendant fifteen years previously. *See id.*

On appeal, the defendant argued, *inter alia*, that the DOC was barred from performing its mandatory duty of aggregating his sentences because such performance would deprive him of his right to serve Sentence 1 continuously rather than in installments. *See id.* In making this argument, the defendant relied upon *Kriston, supra*, and *Jacobs, supra.*[9] After reviewing the facts of the cases, as substantially set forth above, the Pennsylvania Commonwealth Court held:

> These cases indicate that a prisoner has the right to serve a sentence continuously rather than in installments, but a continuous sentence may be interrupted by some fault of the prisoner. The prin-

---

**8.** The Supreme Court affirmed in a *per curiam* order, expressly indicating it offered no comment concerning the Commonwealth Court's determination that all challenges to sentencing aggregation must proceed in mandamus as opposed to habeas corpus. The Supreme Court further stated, "This disposition is limited to the availability of the extraordinary remedy of mandamus, implicated by a clear right to relief in the form of the performance of ministerial duties required of the government, and only in the absence of any other adequate and appropriate remedies." *Forbes*, 946 A.2d at 103.

**9.** The defendant in *Forbes* also relied on *Robinson v. Department of Justice*, 32 Pa.Cmwlth. 77, 377 A.2d 1277 (1977), in which an inmate

participating in work release failed to return to custody. After the inmate was captured, the records officer failed to award credit for the time the inmate was at large. On appeal, the Commonwealth Court indicated that, although a prisoner general has the right to serve a sentence continuously, the act of escape tolls the running of the sentence. *See also Commonwealth v. Stafford*, 29 A.3d 800 (Pa.Super.2011) (indicating a person who escapes is not entitled to credit for time served). In the case *sub judice*, Appellee did not escape from custody; but rather, he was released erroneously from custody. Therefore, *Robinson*, even if persuasive, is clearly distinguishable and provides no further guidance in this case.

ciple is applicable where prison authorities erroneously release a prisoner from prison and then deny the prisoner credit for the time spent outside prison. Here, prison authorities did not erroneously release [the defendant] from prison and [the defendant] is not seeking credit for time he spent outside prison. Thus, the cases do not apply here.

*Forbes,* 931 A.2d at 93 (citations omitted).

Here, we conclude that *Forbes* is not directly on point in that, as the Commonwealth Court specifically noted, the defendant in *Forbes* was not erroneously released from prison and he was not seeking credit for the time he spent outside of prison.[10] Thus, the language from *Forbes,* which the trial court emphasized in the case *sub judice,* is not controlling. In any event, *Forbes* did not alter existing binding precedent and, as indicated *supra,* the cases upon which *Forbes* relied are distinguishable from the instant case.

■ For all of the foregoing reasons, we conclude the trial court erred in granting credit for the time Appellee was erroneously at liberty, i.e., from January 21, 2010 to August 12, 2011.[11] However, the trial court properly granted credit for the time Appellee was in custody, i.e., from August 12, 2011 to September 1, 2011. Therefore, we vacate the trial court's sentencing order as it relates to credit for time served and remand so that the trial court may properly credit Appellee for time served. In all other respects, we affirm.

Affirmed in part and vacated in part. Remanded with instructions. Jurisdiction relinquished.

---

10. Additionally, we note that we are not bound by either the Commonwealth Court's Opinion or the Supreme Court's *per curiam* Order in *Forbes. See Heim v. Medical Care Availability and Reduction of Error Fund,* 23 A.3d 506 (Pa.2011) (indicating Supreme Court *per curiam* orders do not serve as binding precedent); *Osprey Portfolio, LLC v. Izett,* 32 A.3d 793 (Pa.Super.2011) (this Court is not bound by the Opinions of the Commonwealth Court).

11. The Commonwealth notes that, to the extent Appellee might argue that the delay in being re-incarcerated violates due process, which is a concept distinct from "credit for time erroneously at liberty," there is no merit to the claim. In *Commonwealth v. West,* 595 Pa. 483, 938 A.2d 1034 (2007), the Supreme Court noted the following test is to be used in determining whether delays in sentencing violate due process: (1) whether the delay itself is sufficient to trigger further inquiry, (2) the reason for the delay, (3) the timeliness of the defendant's assertion of his or her right, and (4) any resulting prejudice to the defendant. Deliberate attempts at delay, should be weighted heavily against the government, while a more neutral reason, such as negligence, should be weighted less heavily. *See id.* Also, prejudice in this context means a showing of actual prejudice. *Commonwealth v. Burkett,* 5 A.3d 1260 (Pa.Super.2010). Here, weighing the factors, and in particular considering any delay in re-incarcerating Appellee was not deliberate, but due to negligence, and Appellee has alleged no actual prejudice, we agree with the Commonwealth that due process concerns would not provide an alternate reason to affirm the trial court.